```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF NEW YORK

 3


 4   UNITED STATES OF AMERICA,          )
                                        )
 5                                      )
                                        ) CASE NO. 16-CR-237
 6                                      )
        vs.                             )
 7                                      )
     ROBERT J. SEIFERT,                 )
 8                                      )
                 Defendant.             )
 9   _____)
```

                     **TRANSCRIPT OF PROCEEDINGS**
                **BEFORE THE HON. MAE A. D'AGOSTINO**
                   **THURSDAY, SEPTEMBER 7, 2017**
                       **ALBANY, NEW YORK**

**FOR THE GOVERNMENT:**
   OFFICE OF THE UNITED STATES ATTORNEY
   By:   MICHAEL S. BARNETT, AUSA
   445 Broadway, Room 218
   Albany, New York 12207-2924

**FOR THE DEFENDANT:**
   SMITH HERNANDEZ LLC
   By:   JULIO HERNANDEZ, III, ESQ.
   21 Everett Road Extension
   Albany, New York 12205-3357

**USA v. Robert J. Seifert - 16-CR-237**

1       (Open court, 12:47 p.m.)

2       THE CLERK:  Today is Thursday, September 7, 2017.  The

3   time is 12:47 p.m.  The case is United States of America versus

4   Robert J. Seifert, case No. 16-CR-237.  We're here for a final

5   revocation hearing.  May we have appearances for the record,

6   please.

7       MR. BARNETT:  Good afternoon, Your Honor.  Michael

8   Barnett for the United States and Ronald LaCoy is here from

9   probation.

10       THE COURT:  Good afternoon.

11       MR. HERNANDEZ:  Julio Hernandez on behalf of

12  Mr. Seifert, Your Honor.

13       THE COURT:  Good afternoon to both of you.  We're here

14  today of course for a final revocation hearing regarding the

15  alleged supervised release violation as set forth in the

16  violation petition.

17       Britney, would you swear in the defendant, please?

18       THE CLERK:  Mr. Seifert, would you please stand and

19  raise your right hand?  Would you please state your full name

20  for the record, please?

21       THE DEFENDANT:  Robert J. Seifert.

22           (Whereupon, defendant placed under oath.)

23       THE COURT:  Be seated, sir.

24       Mr. Hernandez, have you discussed a disposition of the

25  alleged violation with your client?

**USA v. Robert J. Seifert - 16-CR-237**

1           MR. HERNANDEZ:  I have, Your Honor.

2           THE COURT:  And does he wish to admit to the

3   violation?

4           MR. HERNANDEZ:  He does, Your Honor.

5           THE COURT:  Thank you.  Britney, would you go ahead --

6   before you do that, let me ask you.  Mr. Seifert, have you had

7   adequate time and opportunity to discuss the alleged violation

8   petition and all aspects of your case with your attorney?

9           THE DEFENDANT:  Yes, I have, ma'am.

10          THE COURT:  Do you desire to, as your attorney said,

11  admit to the violation here this afternoon?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  You've had a chance to read a copy of the

14  violation petition?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Britney, would you go ahead and take the

17  plea?

18          THE CLERK:  Mr. Seifert, would you please stand?  In

19  the case of United States of America versus Robert J. Seifert,

20  case No. 16-CR-237, the violation petition alleges in violation

21  No. 1:  Immediately following sentencing, you shall be

22  transported directly from the James Foley US Courthouse in

23  Albany, New York, to the McPike Addiction Treatment Center in

24  Utica, New York, to participate in inpatient substance abuse

25  and/or mental health treatment at that facility.  You must abide

**USA v. Robert J. Seifert - 16-CR-237**

1    by the rules of the McPike program, which may include a
2    medication regimen.  Defendant Seifert was transported to the
3    inpatient program at McPike following sentencing on August 3,
4    2017.  However, Seifert left this program against medical advice
5    on August 15, 2017, and his present whereabouts are unknown.
6             Mr. Seifert, do you acknowledge and admit to violation
7    No. 1 of the petition?
8             THE DEFENDANT:  Yes, I do.
9             THE CLERK:  Thank you.
10            THE COURT:  Be seated, sir.
11            At this time, I am prepared to impose sentence.  Does
12   the government wish to say anything before I impose sentence?
13            MR. BARNETT:  No, Your Honor.  We do seek a guideline
14   sentence.  I believe defense counsel is going to ask for a
15   limited adjournment in the hopes of being able to secure an
16   inpatient placement for his client.  I think his thinking is if
17   he can do that, maybe the resulting sentence could be more
18   lenient.  I have no opposition to a request for a limited
19   adjournment to the extent Your Honor wants to grant that.
20            Other than that, Your Honor, we do seek a guideline
21   sentence.  I don't have to go into all the details about this
22   defendant because it's all fresh in our minds because he was
23   sentenced only a month ago.  I am troubled by the very quick
24   violation coming right after sentencing.  I'm troubled by his
25   criminal record and his apparent inability or refusal to address

1   substance abuse, alcohol abuse, and mental health issues.  So
2   that is why, Your Honor, we do seek a guideline sentence of
3   between 8 and 14 months in jail.  That's all I have to say.
4   Thank you.
5              THE COURT:  Thank you.
6              Mr. Hernandez.
7              MR. HERNANDEZ:  Yes, Your Honor.  Just a quick little
8   background for the Court with respect to this violation.
9   Mr. Seifert was ordered by the Court to pay $100 assessment fee.
10  Once he was brought to McPike, he had a commissary check from
11  Rensselaer County Jail coming to him.  That check was released
12  to me, and I had the check.  My initial plan was to deposit that
13  check into his checking account or his bank, which is in
14  Canandaigua, but they had a local branch in Cobleskill.
15             Right before I did that, I spoke with Mr. Seifert from
16  McPike.  He asked if I could forward him the check and he would
17  handle the check from there.  I forwarded the check to
18  Mr. Seifert.  McPike took him to a bank to allow him to cash
19  that check, which was close to $3,000, Your Honor.  The bank
20  would not cash that check at that time.  So he went to a check
21  cashing place near that bank unbeknownst to the counselor from
22  McPike.
23             When McPike became aware that he had gone there, they
24  was upset.  The counselor was upset.  They had asked that he
25  submit to a cavity, body cavity search.  He was indignant about

1  that, and a confrontation took place about that.  He indicated

2  that he wanted to pay his $100 assessment.  So Mr. Seifert acted

3  in an irrational manner, but afraid that they were going to

4  either go through his body, he fled.  He took off, and he went

5  to Canandaigua.

6  The next day or so, Mr. Seifert calls me up in a

7  complete panic that he had left.  I had told him that he needs

8  to come back and report to his probation officer, Chris McNeill.

9  I contacted the probation department on his behalf, left

10 messages with Ed Cox and Chris McNeill -- Ed Cox was on

11 vacation -- to try to coordinate a surrender on the part of

12 Mr. Seifert.

13 We played phone tag back and forth a little bit, and

14 the following Monday or Tuesday, Mr. McNeill contacted me.

15 Without confirming that there was an arrest warrant, he said it

16 would not necessarily be -- he can come back here, but that

17 would not necessarily be the end of it.  I understood what he

18 kind of meant that there was an arrest warrant without him

19 telling me that.  I explained that to Mr. Seifert.

20 Mr. Seifert came to Albany on Thursday, August --

21 August 24, and came to my office with the purposes of

22 surrendering himself that day.  I was on vacation and out of the

23 office that day.  A complete panic attack hit Mr. Seifert

24 because I wasn't there.  He was prepared to surrender himself to

25 the Court for his actions, and he called 911 in a state of panic

1   and shock and got himself admitted into Albany Med psych ward.

2   He subsequently contacted me.  I contacted probation.

3   Probation was made aware that he was in Albany Med, and once he

4   was released from Albany Med psych center, he was taken into

5   custody and brought before the Court and Judge Hummel, and here

6   we stand here today.

7   I don't think that his violation was -- what I

8   explained to him is that he had good intentions of paying the

9   assessment fee.  He went about it the wrong way and did not

10  handle authority in a proper manner, and he just became

11  completely scared.  He did not try to abscond and leave the area

12  or take off and not come back.  He knew what he did was wrong

13  and he had to pay the price, and he came back.

14  I don't think -- you know, from looking at the McPike

15  treatment center, they had just started to treat his mental

16  illness.  They hadn't had the opportunity to get his mental

17  records to place him in the proper medication that he would need

18  or they would see fit that he needed while at McPike.  So I

19  believe that that was attached to -- their records show that

20  that was the case, that they just didn't know enough of his

21  background to prescribe the medication that he was seeking for

22  and also treat his mental illness in addition to his alcohol

23  addiction.

24  I don't think, Judge, that it's in the interest of

25  society, the best interest of everyone here to just give up on

1   Mr. Seifert at this time when in fact he is still seeking to
2   help himself.  He's not trying to run away.  He's not giving up
3   on himself.
4            I think that, one, whether McPike would take him back
5   or whether there would be an alternative place to place him, we
6   should at least try to see if that alternative does exist with
7   the understanding to Mr. Seifert that if in fact he screws up or
8   drops the ball or doesn't handle things in the proper manner,
9   that at that time, the repercussions are going to be great.  I
10  think that --
11           THE COURT:  I thought I made that very clear to him a
12  little while ago that the repercussions were going to be great,
13  but go ahead and finish.
14           MR. HERNANDEZ:  I think that we can put other
15  conditions.  One of the things, because I spoke to somebody from
16  the VA, Your Honor, is that we can have and I can have the VA
17  place a payee on behalf of Mr. Seifert so that funds which could
18  create a temptation to him can be limited to him to an on-need
19  basis so that he is therefore forced to focus on his mental
20  health issues and his alcohol addiction issues.  I think that's
21  what he wants to do, Your Honor.
22           He was doing okay while he was there.  Again this was
23  a confrontation that he just did not handle well and fright took
24  over and there was flight, but he didn't -- once he left the
25  area, he knew what he did was wrong.  He kept in contact with

9

**USA v. Robert J. Seifert - 16-CR-237**

1  me.  I tried to get him back here in front of the Court as
2  quickly as possible so that whatever issues existed, maybe we
3  can remedy those issues, and I think that -- I think those
4  issues are there, but I think that those are things that we
5  could still fix and that he could still be a supervised and
6  successfully complete probation, Your Honor.
7            THE COURT:  All right.  Thank you, Mr. Hernandez.
8            Mr. Seifert, do you want to say anything before I
9  impose sentence?  You may, but you're not required to.
10           THE DEFENDANT:  Well, I'd like to say that I'm very
11 ambitious about getting my life together.  I really didn't want
12 this to happen.  I have a lot of mental illness problems I have
13 to work out.  They seem to take control of me sporadically on
14 the spur of the moment.  I just have to be I guess more aware of
15 my surroundings and the consequences, Your Honor.
16           THE COURT:  All right.  Thank you.  I have reviewed
17 all of the materials that have been provided, and I'm very
18 familiar with Mr. Seifert because I was the sentencing judge.
19 And when I sentenced Mr. Seifert, I carefully warned you,
20 Mr. Seifert, that if you did not abide by the conditions that I
21 was imposing, that there were going to be severe consequences
22 for you.
23           Probation and the Court and your attorney jumped
24 through a lot of hoops to get you into the treatment center that
25 you chose.  The probation department, abandoning concerns for

**USA v. Robert J. Seifert - 16-CR-237**

their own safety, drove you to the McPike treatment center, and I told you that you had to stay there and you had to successfully conclude the program.

I have no doubt that you suffer from mental illness, and I have no doubt that you suffer from alcohol abuse, but I also believe that you are a very manipulative person and you had your opportunity to engage in treatment and you didn't take it. You absconded. You compelled me to sign an arrest warrant, and you're not going to get another chance like that from me.

I think that it's a problem that you have $3,000 a month coming in. I think it's a problem that you think that if the treatment program wants to do something that you don't like, that you can just take off. And I have a significant problem with that, and I see you as a danger to the community.

You have pled to a grade C violation, and your criminal history category is 6. Therefore, in accordance with the policy statement set forth in United States Sentencing Guidelines Chapter 7B1 and 4, I find your guideline imprisonment range is 8 to 14 months. The statutory maximum sentence is two years as the underlying conviction is a class D felony.

Upon your plea of guilty to the violation of the probation petition and pursuant to the Sentencing Reform Act, it is the judgment of the Court that you are hereby committed to the custody of the Bureau of Prisons for a term of 14 months. I recommend strongly that you participate in mental health

1   evaluation and treatment while serving this imprisonment
2   sentence with a view toward developing a viable release plan.
3              Upon release from imprisonment, you will be placed on
4   a term of supervised release for 12 months.  While on supervised
5   release, you shall not commit another federal, state, or local
6   crime.  You shall comply with the standard conditions adopted by
7   the Court and the following special conditions.
8              You shall refrain from the use of alcohol and be
9   subject to alcohol testing and treatment while under
10  supervision.  You shall participate in a program for substance
11  abuse, which shall include testing for use of controlled
12  substances, controlled substance analogues, and alcohol.  This
13  may include outpatient treatment as recommended by the treatment
14  provider based upon your risks and needs.
15             You may also be required to participate in inpatient
16  treatment upon recommendation of the treatment provider and upon
17  approval of the Court.  The probation office shall approve the
18  location, frequency, and duration of outpatient treatment.  You
19  must abide by the rules of any treatment program, which may
20  include abstaining from the use of alcohol.  You shall
21  contribute to the cost of any evaluation and/or treatment in an
22  amount to be determined by the probation officer based on your
23  ability to pay and the availability of third-party payments.
24             You must participate in a mental health program, which
25  may include medical, psychological, or psychiatric evaluation

12

**USA v. Robert J. Seifert - 16-CR-237**

1  and outpatient treatment as recommended by the treatment
2  provider based upon your risks and needs.  You may also be
3  required to participate in inpatient treatment upon
4  recommendation of the treatment provider and upon approval of
5  the Court.  The probation office shall approve the location,
6  frequency, and duration of outpatient treatment.
7           You must abide by the rules of the program, which may
8  include a medication regimen.  You shall contribute to the cost
9  of any evaluation and/or treatment in an amount to be determined
10 by the probation officer based on your ability to pay and the
11 availability of third-party payments.
12          You are remanded to the custody of the United States
13 Marshal in accordance with the terms of this sentence.
14          Both parties have the right to appeal this sentence in
15 certain limited circumstances.  You are advised to consult with
16 your attorney to determine whether or not an appeal is
17 warranted.  Any appeal must be filed within 14 days of this
18 sentence.
19          Is there anything further from the government?
20          MR. BARNETT:  No, Your Honor, thank you.
21          THE COURT:  Anything further from the defense?
22          MR. HERNANDEZ:  No, Your Honor.
23          THE COURT:  The defendant is remanded.  Court stands
24 adjourned.
25                    (The matter adjourned at 1:05 p.m.)

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**USA v. Robert J. Seifert - 16-CR-237**

2      CERTIFICATION OF OFFICIAL REPORTER

5      I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 30th day of November, 2017.

**/s/ JACQUELINE STROFFOLINO**

JACQUELINE STROFFOLINO, RPR

FEDERAL OFFICIAL COURT REPORTER

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*